UNIVERSITY OF PITTSBURG v. VARIAN MEDICAL SYSTEMS 2012-15-75 MR. DUNNER Wait a few more seconds until everyone is seated behind you. Good afternoon and may it please the court. I'd like to address the claim construction infringement issue first. Everyone agrees that the means clause is a means plus function clause subject to section 112 paragraph 6. Everybody agrees that an algorithm must be disclosed to satisfy that. And the issue is what is the algorithm? The variance position is very straightforward and simple. The algorithm is spelled out in column 5 of the patent in question. That algorithm is described in terms of words like requirements, in terms of words like an important aspect of the invention. But why aren't there just two steps, detecting and identifying the solutions? Your question is why isn't it two steps? Yes, why aren't there only two steps? You're arguing for four. Your Honor, that argument is based on two grounds. One is a statement in column 4, lines 21 to 23, and also a case called Harris v. Erickson. The statement in column 4 is an aspirational statement. It's an introductory statement. It's preceded by the words, as will be discussed fully, and those words are followed by column 5, which starts out by saying detection of motion of a patient, which is what this clause is all about. And then it describes what the invention is. It says certain requirements are involved. The requirements are detection of fiducials using templates, fine-tuning, tracking using templates, and then determining the direction and movement of the fiducials. But those are steps, not structure, correct? Your Honor, no. A template is a structure, and it is a method claim. Utilization of templates. Your Honor, it is structure because it's described in terms of what is done as shown in figure 6, which shows that there are four steps involving structure. One is that the templates are used, which is pure structure. It involves fine-tuning equipment to perform the fine-tuning. It involves tracking, which is also done using equipment, and it involves using templates to determine the direction and extent of movement. Well, there's been no contention that this isn't... Pardon me, Your Honor? There's been no contention that we're not talking about structure here, right? That's exactly right, Your Honor. And your contention, as I understand it, is that the steps that you identify that your opponents don't are necessary to perform the function described in the claim, right? That's exactly right, Your Honor. And the Harris v. Erickson case, which was relied on by the special master and the district court for the opposite reason, actually helps very end. Because in that case, there was a two-step algorithm, and the special master and the district court judge said, well, two steps in Harris v. Erickson, two steps here, that case supports us. What the district court neglected to note, and what the special master neglected to note, was that in Harris v. Erickson, those two steps were described as the invention, and that's exactly what these four steps are described as in this case, as the invention. Now, it is also argued that there's a claim differentiation issue here, because some of the sub-steps, the templates, the fine-tuning and whatever, are set forth in dependent claims. But the fact is that the basic rule in a means plus function situation is that you don't look at claim differentiation, and while there is one case that is relied on, the Wenger case, which said that there are certain situations where the functions don't overlap, we submit that doesn't apply here, because every one of the four steps is subsumed in the column five statement. They're all under detection of motion of a patient. It all relates to exactly the same function. Originally, below, you argued that there needed to be 30 steps in the structure, correct? We argued both 30 steps and four steps, and we argued 30 steps, which I think would be appropriate, following figure six, which is the overview of the entire system, and we also argued that a preferred algorithm is the four steps, because those steps are described in column five and succeeding columns as required and being especially important. So we think it would be appropriate to find 30 steps, and we think this case could be decided with four steps, and the fact is it is undisputed that if the algorithm is four steps, there's no infringement. The University of Pittsburgh does not argue the contrary. I see where in column five this fine-tuning step is described as part of the invention as being necessary, but where does the specification say that about 200, which I guess is one of the other things that you say is a necessary step, tracking the fiducials and subsequent images. Where does similar language appear about that step? 200 is the one that says present alarm and feedback signals, and that appears in column eight, lines seven through 17, and the reason that is included, it's one of the four steps in the overview chart, which is in figure six, but the first three steps do not provide the bottom line of the claim, the bottom line of the claim that it has to include movement associated with breathing by said patient, and the only place where that appears is in step 200, which is described in the column eight language that I described, which ends with this would include movement associated with breathing or tremor of the patient. Without that step, you have not satisfied the claim. So that's how that claim comes in. Mr. Dunner, why shouldn't the damages include the beam generator? Your Honor, there are three aspects to that point. The first aspect is that claim 20 is an intended use claim. It's a claim that talks about the language. That it recites an apparatus. Claim 20 talks about apparatus, but the key language is it's claim 22 that really is in question. The apparatus of claim 20 adapted for use during treatment, but why isn't claim 20 relevant? Claim 38 is a dependent claim, right? Yes. Claim 38 expressly comprises a beam generator, and if that's a dependent claim, dependent on claim 20, doesn't claim 20 also encompass the beam generator? Your Honor, the issue is a damages issue. Claim 20 is generic to a system, but the claim 20 says nothing about a beam generator, and the way the district court found But it encompasses it because it's a dependent claim recites it expressly, and so why isn't that a suitable basis for the damage calculations? The reason it is not a suitable basis, well, there are several reasons. One is the district court provided a jury instruction that called for two separate royalties, one for the beam generator and one for the RPM. We have found no support for a single claim providing for double royalties, and not only that, we think it is grossly improper to do that because what they're able to argue before the jury was exactly what this court prohibited in the Unilaw case, which involved different facts. You concede that claim 38 would encompass the beam generator and the operation within the system that includes the beam generator. We do, Your Honor, but the problem is that claim 38 came in after reexamination, during the reexamination, so if claim 22 does not cover a beam generator but is merely an intended use like barred M3 systems, which we think is totally analogous, then the damages would start to run after the reexamination, and that would cut the damages by 90%, so it is very significant as to whether or not claim 22 covers a beam generator. So you're saying that there's nothing in claim 22 that goes beyond claim 20 except the fact that you could use it in conjunction with a beam generator? Claim 22 has two provisions that go beyond claim 20. One is intended use with a beam generator, and then also gating means, which is synchronized to actuate the beam generator in synchronism. But claim 20 has to include a beam generator, otherwise claim 38 is an improper dependent claim. Is that right? Your Honor, claim 20 is generic. Yes. It is a generic claim which would cover anything, but the question is what is the royalty base for claim 20 if you want to? Your argument doesn't depend on whether the beam generator is described in claim 20 or claim 22. I mean, you're saying whether it's described there as part of the combination or not, you still have to satisfy the entire market value rule unless you can show that the sale of the accelerator is driven by this component that you can't get royalties on the accelerator, right? Your Honor, that's not quite. That's not true? No, that is not. You asked me what our position is. Our position is based on two grounds. One is that the Garrison case, which is the Supreme Court case. I'm just confused. I know you're arguing that the accelerator is not within the claims, but what I'm saying is let's assume for a moment we reject that and we find that the accelerator is within the claims. I thought you were still arguing that even if it's part of the combination, because it's not new, it's not something that's novel under this patent, that you can't get damages with respect to it unless you show that the sale of the accelerator is driven by this component. No? Your Honor, that is true except let me clarify the point. We say the Garrison case has spawned two lines of cases. One is based on the entire market value rule in which what you said is exactly true. Another one is not based on the entire market value rule, and it's supported by the second, third, six cases and some recent cases, the DataQuill case and the Pace case. The DataQuill case interpreted that second line of cases where you have a combination where the elements are in the combination and where one of the elements is an old element, an old system that existed, like a windshield wiper in a car. If you had a claim to a windshield wiper in a car, that line of cases would say you don't include the car in the database. And the DataQuill case uses the entire market value rule emanating from that. The Pace case does not use the entire market value rule. Neither does the second, the third, the six circuit cases. All right, so if we're looking only at, say, claim 38 was all we had. Put aside claim 22. Say claim 38 had been there from the beginning. Right. You would agree that the entire market value rule would be off the table, right? And it would be a different analysis. And that's your Garrison second line analysis, correct? Not correct for this reason. The DataQuill case has that kind of a situation, had a combination claim, and yet it said they applied the entire market value rule. We say even if the entire market value rule didn't apply under Garrison, there's a second line of cases that says that when you have a combination consisting of something like we have here, a beam generator or a linear accelerator, which is what it's part of, which existed before, which was sold independently, which is billed independently, we say that the damages base should not include the linear generator, even if claim 38 was in there from the beginning. Okay. But isn't it true that with the Georgia Pacific factors that that encompasses all the concepts that Garrison and Progeny were concerned about? So, for instance, you've got your GPS hypothetical and you say, well, you can't just take a GPS off the shelf and stick it on the dashboard. But what if the GPS is part of the car and it actually is the mechanism that starts the car or turns the lights on in the car? Isn't it true that there could be a value to that GPS when installed in conjunction with the old elements that's greater than just the off-the-shelf value? It wouldn't be the total value of the car, of course, but it's greater than just the off-the-shelf value, right? Your Honor, first of all, the Georgia Pacific factors do not cover a situation where both elements are in the same claim. We've raised that point. Secondly, we submit under the second line of Garrison cases, you should not include it. It should not be part of the damages base and you should not look at it because it was a separately existing product sold separately, billed separately, and you should not include it. Thirdly, we think it was totally improper to- But if, in fact, under 38, it is this product that actually initiates the beam, right, turns it on and off rather than simply is something that you can measure the movement of the patient's breathing. But it actually initiates the beam in the machine. There's no doubt it is used in conjunction with the RPM. Our point is it can be used without this RPM. It was used with gating mechanisms before this lawsuit ever started for, I think, 35 years, and all I'm suggesting is that under the line of cases we've cited, the second, third, sixth circuit cases and the data quill and pace cases, they would not agree with that. But there can be no incremental greater value from the fact that it does more when in the machine than it would do on its own. I think the answer to that is these cases would not include the linear accelerator or the beam generator and the most significant part- Well, it would if it drove the demand for it, if it affected the demand for the linear accelerator. If people bought more linear accelerators because they could get this item with it, then it would be appropriate to have a royalty on the linear accelerator. There's no evidence- No, no, but I understand this theory. If that were the case, you would get a royalty on the larger product, right? I would guess that if you could show that it drove the sales and increased the sales- In other words, if I bought a new car solely because of its fancy GPS. I would say- That's an interesting question. If you satisfied the entire market value rule doing that, you might argue that one should include it. But under no circumstances should you include these two elements as separate elements and permit the lawyer for the University of Pittsburgh to go before the jury and say, there's billions of dollars worth of sales here, so this royalty is just a small amount of royalty. Mr. Dunning, you've run over your time, but that's because we've been asking you questions. We'll give you three minutes of rebuttal time. Thank you. Mr. Peterson? May it please the Court? I'd like to start with Judge Lurie's question on the claim- the issue of Claim 20 and the means versus function element, and that is why two elements? Why was that the proper- two parts from the specification with respect to the structure? And there's actually several reasons why the district court's decision in that regard is appropriate and why Varian's sort of 30 versus 4 alternative doesn't give you any basis to find an error there. The first that I think is worth noting is that one of the things your precedent says we do if we're trying to ascertain what is the relevant structure is we say, what would one skilled in the art regard as the relevant structure? The record in this case contains the declaration at the claim construction from Pitts' expert that the two steps that the district court identified would in fact be the relevant structure that one would select. Suppose you're right about that. Let's assume it is covered by the claim, but why should you get a royalty on something that is not novel and whose demand is unaffected by being combined with this particular component? Let me jump ahead to the damages issue. Because first our view is not just claim 38, but claim 22 does in fact read also on the- Well, let's assume that that's true. Then let me jump ahead then to this first. Does the entire market value rule apply in this situation, which I think is part of what you're understanding now. Well, yeah. The point is that you can write any claim to include an old element and then just say, well, because we claimed as a combination, we ought to get a royalty on the old element as well. But think about the question that you're being asked to decide. In this case, the jury was given the opportunity to conclude by applying the Georgia-Pacific factors that an appropriate warranty on the beam generator was zero. In fact, the very first question they asked during deliberations is whether they could award zero. In this case, Varian called no expert at all to testify. But they weren't told that the item here had to drive the demand for the accelerator, right? But they were- Correct? That's true. That's true. Because that's entire market value. An entire market value, if you go back to Garrison itself, is a test which applies when you're dealing with patented and unpatented articles. That's when the entire market value is present. Mr. Peterson, tell us what the entire market value rule is. Entire is a broadening term, and we've been dealing with it for years. I remember in Reithe, we tightened it a little bit. We were talking about convoy goods. Correct. And is it your view that our cases have really sort of reversed the meaning of the word entire and tightened up the base, so to speak? I think, Your Honor, what your cases have recognized is that the place where you draw the line in thinking about what the relevant royalty base can be is at the point where the patent, what the patent covers, and that when you venture beyond the scope of the patent, that is with convoy goods, with other non-patented items, when you go there, then you have an entire market value issue, because in that scenario, then, what you have to do is, it is appropriate, you're extending the patent protection to things other than what the patent covers. So as I understand your argument, and frankly, as I understand this was conceded below and by the other side here, that if, in fact, all you're talking about is patented items in conjunction with unpatented items, then you're talking about the entire market value rule. But if you were talking about claims that include some things that were known in the prior art and that are actually patented because there is part of the claim, that you're outside the bounds of the entire market value rule, and then the question becomes whether we go down Mr. Dunnard's second-line Garrison-type analysis or whether you can apply a broader application of all of the normal factors that would allow us to determine what the value of the combination is. I think your Honor has it right. What's being advocated is not the entire market value rule as such, which has a patent pivot. What's being advocated is that you find this sort of Garrison prong, too. Now, I don't think Garrison has a prong, too. And if you look at these cases that Mr. Dunnard referred to, the second Sixth Circuit cases and so on, you're talking about cases that were decided back in the early teens of the last century, and they're dealing with quite a different problem, which is the problem where at that time the patent law recovery was focused on essentially the confiscation of the profit, and the courts were struggling with the fact that surely not all profits should be taken. Here, if we move forward to modern time when we're dealing with a royalty regime, as your Honor I think at least raised as an issue in one of your questions, Judge O'Malley, the Georgia-Pacific framework has built into it factors which allowed the jury in this case, whereas I say it was given the affirmative option of awarding zero in the beginning. Why should it be possible by claim drafting to include some prior art, unpatented item, and then argue for a royalty on it when you wouldn't be able to argue for that royalty if you didn't bother including the old item in the claim? Your Honor, I think it is perfectly – I mean, the patent – if it is something which is permissibly patentable under the patent statute, then I think in terms of deciding what is an appropriately royalty for that, that there's nothing unfair about doing what happened here. That is, to give the jury the opportunity on the record to assess the relative contribution of the new innovation versus what existed before. Are you saying it's not just a question of claim drafting, but claims that were allowed? Well, Your Honor, I guess what I would say is that if that's a problem, then I think maybe the way that gets dealt with is through other techniques, I mean, including the question of how claims get defined originally perhaps, and here that's limited to the means plus function issue. We don't have a definite issue with respect to the means plus function determination. I think it implicates other protections like the Daubert scrutiny that one would do at the gatekeeper function for expert testimony on this subject, and here, of course, there was no expert from the other side who even debated the subject of what the royalty would be on the beam generator. They simply took the position that it was an all-or-nothing proposition. Now, as I read your expert's testimony, as I understand it, he didn't say, just give me some percentage of whatever the big machine is. What he said is you have to assess what kind of value adding this to the machine, especially when it had additional functions, when added with the machine would be. Is that right? He did, Your Honor, and that dovetails exactly into certain of the Georgia-Pacific factors. I don't think I can quote 13 entirely, but if you look at the last part of it, it has a specific reference to what else was contributed into the machine itself, and that's true of other factors as well. And again, what Varian is advocating in this case is essentially an all-or-nothing proposition. They're asking you to say that we should adopt a rule which conclusively sort of says that there can be no possible recovery in this kind of situation, that you have to embark in this sort of Garrison II analysis. Could I just interrupt you because I don't want to run out of time because I do think there's a significant claim construction issue here, and that is how is it that the function defined here, which no party is disputing, can be performed without the fine-tuning step that's described as part of the invention and is important at the top of column five of the specification? Your Honor, the fine-tuning step is a situational step, which is designed to address the situation—I'm sorry, situational step— designed to deal with the particular patient and lighting conditions under which the machines are going to have to operate. So it's not something which is invariably— Yes, which the machines are going to operate. So why isn't that part a necessary part of the function here? And why isn't it described as a necessary part of the function in column five? I think it's described as a required element, but in the context of a situation where lighting conditions and otherwise are going to require that kind of fine-tuning. And I think the point is that if you look back to this Court's precedent about what we're looking for as the required structure, we're looking for what's necessary. It isn't required under the Court's precedent to talk about entirely everything that's necessary to make the thing work. And so I think you have to focus— It doesn't have to include everything that's necessary to perform the function. Your Honor— I would have thought that the cases were pretty clear that it does include everything that's necessary to perform the function. Let's see, Your Honor, I think that—let's see. I think that's from the Nomis case, which is cited in our briefs. It's not essential to include—but I guess my predominant point here is that it's not something which is going to be required whenever you use the machine. So therefore, it's not absolutely necessary to this process. And let me also make another, I think, important point. But the process claim here, claim 20, includes that, right? No. No, it doesn't. It doesn't. The processing means does not speak at all about any kind of fine-tuning. And what the specification is talking about in Column 5 is something that's necessary in the light of certain lighting conditions. And I also commend to you independent claim 19. Well, that's not the way it's described in Column 5. Well, Your Honor, I mean, I think Column 5, if you look at— It requires an implementation which is robust enough to accommodate for the variations in shapes, et cetera. That sounds as though it's necessary to perform the function of the invention. Shapes, appearances, and lighting conditions to which the fiducials are subjected. And it goes on to talk about how these things can be modified to accommodate actual conditions, if you further read down in that paragraph of Column 5. And let me also—because I think this bears on Your Honor's question. But, I mean, it says the invention satisfies these requirements by using successive levels of filtering. That's going to be in the case where that's required by the particular lighting and other conditions that are present. And I commend to you independent claims 19 and 2 to look with in comparison because if you look, for example, at independent claim 19, what you're going to see under the processing means is the discussion about the use of templates and a successive process of zeroing in on what's going to be tracked. And so I think that that's a means plus function claim as well. Now, claim 20 is a broad claim. And I think the question then of how the court decides what is the relevant part of the structure— I'm sorry, the specification which will supply the structure is dependent in considering what part relates to which particular claim. And then I also—I can't help but respond to Varian's point here as a matter of sort of claim reading methodology and deciding what would one regard as the relevant part of this screening process, mindful that the state-of-the-art evidence is uncontroverted with respect to— there's no fine-tuning element suggested by it. But how do you— What does that mean? I don't understand what you're saying. It's the point I tried to make at the beginning, Your Honor. The two steps were advocated by Varian's expert at claim construction as what someone in the art would regard as the relevant structure. The four steps weren't.  in terms of deciding how you select the structure. And then going back to my point, you have a general claim 20. It doesn't have this filtering limitation. You'll find that in some of these other narrower independent claims. Those are means plus function claims as well. You have to select a structure to associate with those. I think that gives you an entirely principled basis to conclude that this is not something that one would associate with claim 20 because what you're effectively doing is you're narrowing what's a broad claim. I have a claim construction issue, and that is, I don't understand why claim 38 was added if you say claim 22 covers the full scope of claim 38. Well, claim 38 is a little different, Your Honor, because it includes some additional provisions. So it talks about that the generator is configured to provide computer-controlled multi-beam conformal dynamic radiotherapy. So in that sense, I think it's a little bit more limited than 22, though it would apply to this particular technology. It's just radiation therapy, right? I mean, isn't that exactly what you say 22 covers? There's a similarity to be sure, but I think from the point of view of doing this in a claim construction exercise, I think that's how you differentiate the two. I'm trying to understand what the difference is. Is it just a difference in the way, in other words, are you saying a rose by some other name? What is the difference? I think what it does is it's designed to be more specific in describing what the beam generator is going to be doing, in effect. So is claim 38 further comprising a beam generator? Yes. So that's expressly reciting the structural aspect of the apparatus of claim 20, whereas 22 talks about the apparatus being adapted for use during the treatment with a beam generated by a beam generator. It's a little... There is, Your Honor, but I don't want you to think that the comprising language plays some crucial part here because let's focus on the other part of what claim 22 requires. First, it speaks about the fact that there will be actuation, that is, of the beam generator, which is a controlling function. And the other thing it does, which is important to keep in mind here, is it speaks about synchrony, that is, a synchrony between the beam generator and the RPM unit. A synchrony can't be achieved unless there is an interactive relationship between the two. So I think, notwithstanding the comprising word that finds its way into claim 38, that the district court was also correct in this case to continue to view the claim 22 as also reading on the relevant combination of the beam generator and the RPM unit. Your red light is on, but we did give Mr. Donnell a little extra time. Do you have any final thoughts? Let me... This case... Let me just go back to the damages question. Again, I can't emphasize, I think, enough that... Let's talk about... You obviously are being invited to adopt a rule, which is sort of a blunt instrument, Garrison 2, which is going to suggest... We never use blunt instruments. No, I'm... Fair enough, Your Honor. But that's... You're being told to set aside a jury verdict by saying that this can never be allowed. No, I don't think that's their argument. I think they're saying it can't be allowed unless you show that the sale of this item, together with the linear accelerator, had something to do with the sale of the linear accelerator. Let me respond to that, Your Honor. There's... We did not purport to comply with the entire market value rule, certainly. But there's all sorts of evidence in the record that Varian regarded this... Varian, when it started selling RPMs, it regarded it as a huge competitive advantage. It described it as giving itself a unique competitive edge on others. It described this combination as a total solution for customers, which would enhance its ability to be in the marketplace. So there's not... I can't say, because it's not really... Not relevant. I can't say we satisfied the drove-all-the-demand, Judge Lurie's example of buying the car because of the GCS system. It's not drove-all-the-demand. It's drove-demand for it. But, Your Honor, there's a lot of evidence in here that this combination conferred enormous advantage on Varian, and it's reasonable in those circumstances to allow a jury to conclude that some small measure of that should be taken into account as damages. And one last question. If we were to conclude that your construction of Claim 22 was not correct, would you be able to receive any damages under Claim 38, or is the timing such that, given intervening rights, that that becomes... The issue becomes moot as to damages beyond the RPMs? Your Honor, I don't know about the intervening events, to be frank. I believe it's the case that the record here, the relevant figures with respect to sales were broken out, so one could ascertain how this royalty would work if you limited it to the reissue patent time period with respect to the current damage award. But I can't... I'm sorry, I don't know whether there's been some technology or other change. We'll see if maybe Mr. Donner has an answer to that question. Thank you, Mr. Peterson. Mr. Donner has three minutes for rebuttal. Can you start with my last question? Can you start with my last question? Because before I asked you about Claim 38, you said it didn't matter because of intervening rights and so that there wouldn't be anything left. And so what is your question? If, in fact, we agreed with you that Claim 22 does not really cover the full apparatus, or the full system, and were to say that the only way that the beam generator would be encompassed within any possible recovery of damages would be under Claim 38, would they be able to get anything under Claim 38? Claim 38 would cover a small percentage, about 10% of the total damages, if Claim 22 was not available to them to cover the system. It would cover damages after reexamination, assuming that they got past the hurdle of the claim construction issue. So let me just talk about a few things. One, Judge Dyke, I think you were exactly right on when you focused on the language in Column 5. Mr. Peterson is talking about special lighting conditions. That isn't what Column 5 is talking about. Column 5 says, in order to practice the invention with fine-tuning, with templates and so on, in order to get robust results, you need to do all these things. Fine-tuning is necessary, it's important, it's even singled out as being an important aspect of the invention. Next, I would like to mention on the damage issue that Mr. Peterson talked about the advantage in various literature, Varian, about this combination. If you look at the testimony in question, they were talking not of the linear accelerator or the beam generator, but of other accessories. They added claim, a question was asked why, I think Judge O'Malley asked this, why did you add Claim 38, given your view of Claim 22? Well, I think the simple answer, there isn't any testimony that says that, it's clear. Claim 22, under any reasonable interpretation, does not include a beam generator. The Bard case versus M3 Systems makes that absolutely clear. The district court was clearly wrong. They added it during the lawsuit because they saw their patent was inadequate. They added what during the lawsuit, Claim 38? Claim 38. But does Claim 20 encompass the beam generator? Your Honor, Claim 20 is directed to an RPM. But does it encompass the beam generator? I don't believe it does. Then how can Claim 38 be dependent on it? Because Claim 38 adds something to it. Claim 38 says the appraise of Claim 20 is further comprising a beam generator. A dependent claim includes all the limitations of the independent claim. Your Honor, I believe Judge Rich decided the case, Wilson, Sporting Goods case, in which he said there are certain situations where a dependent claim actually does not satisfy the situation. He might have been talking about the Doctrine of Equivalence, perhaps? I don't know if that involved the Doctrine of Equivalence. It may. Go ahead. I see I have 11 seconds left. And I guess I would merely note that I guess I won't note anything. I think you will note by saying thank you very much. I will say goodbye. The case will be submitted.